Good morning, Your Honors. Bill Ford for the appellants. I'm with the Collins Ford Law Firm. This case comes to the Court as an advertising injury case and specifically implicates one particular enumerated offense, the so-called use of an advertising idea. And my instincts tell me that the best use of my 15 minutes would be to address very briefly the use of an advertising idea. I would like to touch on the prior publication exclusion. I will touch on the intellectual property exclusion, the cross-liability exclusion, and the third cause of action. That's a lot of conversation, but I'll be rifle-shotting some of these points. On the first subject, where the District Court erred, in our view, and where it got off track, is on the subject of an advertising idea itself. The Court was persuaded by endurance that an advertising idea must be creative, unique, or original, as opposed to, and I'm going to quote, mechanical or uncreative. And in California speak, this is certainly heresy because we know that questions of fact always and invariably implicate the duty to defend. Are you only focusing on the Los Angeles use of this product, or the advertising idea, or more at this point? All of them, but I will specifically address the fourth advertising idea in due course, if that's all right. So the District Court granted summary judgment on all the claims? Yes. Right. So what specifically, if you can, and you mentioned some things, areas that were going to be your focus, but what are you asking the panel to reverse as to which claims? Sure. Give me your strongest arguments. We're asking the Court to reverse and remand. And what the trial should look like, in our view, is this. This case is an Isaacson, Zeebeck, Sampson, Prune case. Those cases, and probably ten or twelve of their progeny, state that the rule in California is that where an insurance carrier denies coverage or breaches the duty to defend, the insureds enjoy the right to settle. And in a proper case, that settlement creates two presumptions, one as to the fact of liability, which speaks to the lack of collusion, and the amount, which speaks to the reasonableness. And we know that the burden then shifts to the insurance companies to come in and prove that this deal was either collusive or unreasonable. And that would make for a robust trial down the road, but none of those issues were litigated on this summary record before the Court. So the arguments that you're getting, and pages and pages and pages of briefs, frankly, way over-briefed, go to points that are so well-established and so easy for the California Supreme Court that one wonders why they burden the Ninth Circuit. For example, to say that the advertising idea is not creative or unique or original goes to the merits. And in the Seventh Circuit, Judge Posner in Taco Bell had no problem saying, whether meritorious or not, this is the kind of coverage you purchased, and therefore you get a defense. Wasn't that type of idea a little more specific? The dog, isn't that the chihuahua case? Right, the chihuahua case. And so I'm still struggling on why a recommendation or an idea that you talk about your prior successful use of this product is an advertising idea. It is, at bottom, a method or manner of promoting a product. I don't know if your Honor plays golf, but for example, bubble watch... I live in Alaska, so it's not a real popular sport, but that's okay. Can you think of a famous skier? Can you use a salmon fishing analogy? If a skier wins a famous contest or an Olympic event or something like that, he or she could certainly sell those skis, and you go, wow, I need to have those skis because they win. In this case, it's even better than that, because we're talking about not the entire universe of consumers, but specific market segments, namely public utilities that would want to buy an automatic retraction system. And so to be able to go to the county or a dozen other potential users and say, we've already done it, we're successful, has the advantage... First of all, you appear much better than you otherwise would, but also you don't have to do all of the drawings, you don't have to come up with a prototype and so forth. That is specifically alleged in the complaint. Now, it may be good or bad or ugly or purple or creative or not, but it is an advertising idea. It's a way to go and get these contracts. And so the policy nowhere defines advertising idea, but the case law and your colleagues in the different circuits that have struggled with this have had no problem saying that it simply is a method or manner of doing business. On the... It seems like... I don't know if... Can I ask you, the insurance stipulated to significant monetary liability, but apparently with the agreement that the insurance would not have to pay the amount. And so I'm just trying to figure out on the settlement by the insurance, does that affect our analysis of the insurer's duty to defend? It does not. And this gets complicated before it gets simple, but the short answer is this. The third, fourth, and fifth causes of action were against Burlington, and they were pleadings in the alternative that basically said, let's assume for the sake of argument there's no contractual duty to defend. And I choke when I say that because there was. But if that were the case, then Burlington, even in that situation, would still have breached the implied covenant of good faith because it promised to defend, it agreed to defend, but then did not. I don't know if that is responsive to your question. And so on the issue of payment, which is... I was just wondering if we should be concerned about a case brought based on a settlement like this. Right. I think the answer resides in a footnote written by the late, great Walter Krosky, who was the dean of our coverage bar. And in the Prune case, he specifically opined that he could see no reason in law or logic why a party settling would have to actually make that payment. In fact, he went on to make the point that it would defeat the entire purpose of a covenant not to execute. And so I think if you read Prune and specifically that footnote, you'll get a good feeling about that issue. And what effect should the insurer's allegation of fraud and collusion have on our analysis of the issues here? I think it's white noise in the context of this case. They did not have... They simply did not raise the issue. In other words, no one raised their hand in the lower court and said, this whole thing is a sham or it's a collusion. There were no declarations to that effect. And we just lie in wait, hoping they'll do that if and when we're so fortunate as to be remanded. Because Mr. Dermott's claim clearly exceeded $100 or $200 or $300 million. You can go to any major city in the country now and you will see storm drain devices that prevent babies and tennis balls going down the drain but tons of water will safely go off during a flood. And so it was a big deal. So $6.7 million is a relatively small royalty and I think the evidence will show that. But directly responsive to Your Honor's question, there's nothing in this case about late notice, like why were they litigating for four years and only now did they raise it? That's not before the court. And there's no issue about fraud and collusion or any of that before the court. I'd like to talk a little bit about the exclusions. I'm trying to figure out what standard governs our analysis of whether the prior publication exclusion applied here. And does there need to be any evidence to show that some advertising ideas fell outside this exclusion or is the mere possibility of that enough? Your Honor, I'm really glad that you asked that question. The burden of proof with regard to exclusions generally is always on the insurer, as you know. And the insurer must prove on undisputed facts as a matter of law that the exclusion conclusively negates coverage. In other words, there is no possibility or no potential for coverage based on this exclusion. Now, you look at, and very quickly, on the prior publication exclusion, where the trial court got off track was it read into its analysis paragraph 71 of the First Amended Cross Complaint. Paragraph 71 unmistakably and clearly only had to do with a vestigial claim of trade libel, which we have now abandoned. The First Amended Complaint was written in 2013, and I was one of those lawyers during 2013 and 14 and 15 who we were waiting for the Supreme Court to decide Hartford v. Swift, which it did in the spring of 2015. In my wisdom, having read that decision, I thought, this bird is no longer going to fly. Out it went. But those allegations nonetheless remain. But as you read paragraph 71, I would ask the court, when you go back to your sanctum sanctorum, circle the word that as it appears twice in paragraph 71, issue over. Because what was alleged was these false statements went to that there was an exclusive right of ownership or that there was a patent pending. Those only have to do with trade libel. Think apple orange. And the apple would be the trade libel, which is now dead, and the orange would be all of the vital allegations of the use of an advertising idea. Do you want to reserve the rest of your time? I better. Thank you, Your Honor. Good morning, Your Honors. My name is Paula Carstensen. I'm here on behalf of the Endurance Insurance Company and I'll be splitting my time with my co-defendant, Burlington Insurance. With respect to Endurance, it is significant, the timing of the events, because it's undisputed here it goes to the voluntary payment provision idea. We didn't even get notice of the settlement. This is not a case where we left our insured hanging in the wind. We didn't get notice of the settlement until they had already agreed on it. And at that time, they were being already represented by another insurer with respect to Endurance. Plaintiffs have offered no response to this argument in their reply brief or now as I hear their argument and thus have conceded that point. With respect to the advertising injury, counsel is trying to make it all into the advertising idea concept and I think that is very correct what the district court found. What was being advertised was the product itself. This idea that it was being promoted to others really just concerns the product. But that's not it in a nutshell. There's other reasons why the advertising injury doesn't come into play. First and foremost, there's no wrongful taking here. The complaint clearly alleges that Mr. Germant suggested to OP and West Coast put this information on our website to increase your profits and then that will increase my share of the profits. So the crux of this complaint as the district court found is that not advertising ideas like your honor pointed out the Chihuahua or the stripes on the Adidas tennis shoes were being misappropriated. What was being misappropriated was the was the invention itself and there's numerous California cases and cases from this court that say when the advertising merely exposes their infringement or when the product is stolen and advertised that just doesn't implicate advertising injury. I want to ask you about the prior publication. Was Ms. Germant's state complaint consistent with the possibility that the prior publication exclusion did not fully bar coverage? I believe that it fully barred coverage in the way the complaint is alleged and he pointed you to the paragraph that alleges that these supposed advertising began on January 1st before our before our policy incepted and it doesn't have to be you look at the facts the fact that it's in the claim that he's now abandoning those are the only facts in the complaint as to when they begin. But if it was possible that some injuries fell outside of the prior publication exclusion would that be enough to trigger Endurance's duty to defend? No because if they're the same that began earlier then that would not and it would not bar coverage. As the district court found I think in his opinion he really struggled with that a little bit and he said they've been given numerous times to come in here and show me you know show me an advertisement they never did that show me what you're talking about and they could have done that and I think we carried our burden in the first place to come forward with facts as alleged that take it outside our policy period and then they did not meet their burden of saying hey we had a new idea that was alleged within your policy period. So what facts in your view are in dispute regarding the settlement and are any of these material? With respect to whether you know there's an actual advertising injury here I don't think they're necessarily material as to our voluntary payment issue the one key fact with respect to Endurance that's not in dispute is we didn't get this amended complaint until May 6th which was the date they all agreed hey this is what we're going to do we then promptly notified them that we're reserving our rights we need to investigate this so in terms of our policy you can't go out and settle without involving your insurer and even under California law you don't have to prove prejudice but here there's clearly prejudice to all parties because they're doing this weeks before a big trial is to start I'll let Burlington address their part on that issue How long has this been in litigation? The claim had been in litigation for four years and before they came in and attempted to amend their complaint it was a clear patent violation It had already been in litigation for four years and they attempted to amend the complaint when? It was May 6th and that was less than a month before the trial was set to begin so they're coming in and seeking you know to amend their complaint oh you've got to try defend us in this case on that short notice but it really you know in the long run the district court correctly found here that what they were seeking in the amended complaint was not try as they might to artfully plead I'm glad to hear the admission it wasn't covered under the recent California Supreme Court they've dropped the trade disparagement claim and they're really stretching to find an advertising injury claim I wanted to point out just quickly I've got 40 seconds left that he didn't argue this but in their brief they're trying to argue a new argument hey this is a trade dress claim and bring it in under a separate provision but it's not a trade dress claim either again it's the theft of the product that's involved here and I'll defer now to my court counsel Thank you very much Good morning your honors Thomas Holden for the Burlington Insurance Company um one of the questions that was asked of Mr. Ford was whether it matters that there was a stipulation to a large amount of money but the insurer didn't have to pay does that how does that affect things in fact the California Supreme Court case of Hamilton which we've cited in our papers held that a defending insurer cannot be bound to a settlement to which it has not agreed and that's the situation we have here Burlington agreed to defend appointed counsel to defend never said they were withdrawing from the defense and in fact said we do not consent to the settlement that you're proposing because we're a defending insurer and we have the right to consent to it and we don't consent one other thing I think I should point out is that as far as the dates of when the trial began in litigation for about 4 years the amended complaint was filed on May 21st the trial was scheduled for July 12th so it was less than 2 months before trial it was only received by Burlington on June 3rd so at that point there was about 40 days to trial and Burlington considered it sent it out to counsel for a coverage analysis decided to accept the defense and did so within 30 days which is well within the regulatory time that an insurer has to make a decision on coverage and agreed to defend the argument that Burlington somehow breached a duty to defend by agreeing to defend and appointing counsel simply just is not supported by California law talk to me about the duty to defend and you know what your best argument is there with respect to the duty to defend what were your duties relating to the state proceedings well in addition to the advertising injury arguments that endurance is making which we have all the same arguments it's the same exact language we don't have the prior publication exclusion but in terms of advertising idea we have the same arguments in addition to that we have a cross liability exclusion which provides that any claim by an employee former present future employee of any insured is not covered and the idea there is you don't want insureds or parties affiliated with insureds to be suing each other because of the possibility of collusion among parties that are affiliated with each other is something that the insurance company doesn't want to insure and so they put on an endorsement said cross liability exclusion said we're not going to cover any claim by any insured or any employee of any insured or any former employee of any insured I'm thinking a severability clause also that pulls out the two separate pulls out OP from Minadora it does not have that effect with this exclusion because the word any insured as the Supreme Court said in the Minkler case there may be cases of an intended to apply not just to the insured making the coverage claim but to any insured that the severability clause will not create an ambiguity and a specific example the court cited of a possible exclusion that might do that is a cross liability exclusion that's what we have here and it specifically says employee of any insured you know this is a case that involves questions concerning the conduct of insurance companies and it it involves interpretation of insurance policies under California law we're just we're the federal court we can't give any any authoritative decisions under California law so have you folks tried this has been in litigation how long now is this coverage or the whole thing the whole thing it would be probably eight years seven years what year was maybe a little more than that so have you tried have you folks tried to settle this oh sure yes have you been to mediation on it we have been to mediation and that didn't work either didn't get very close we also have an intellectual property exclusion endorsement on our policy which is broader than the intellectual property exclusion that's in the standard form it implies to any intellectual property right infringement or violation of any intellectual property right it lists several others and says including but not limited to what should the district court do with respect to that the district court didn't reach it because he held that this wasn't an advertising idea in the first place an example of an advertising injury that would not fall into the Burlington only exclusion that would not be there are offenses I believe such as false imprisonment things like that that don't have anything to do with intellectual property malicious prosecution I think is one of them how would that be an advertising injury well advertising injury that's a good point that would be in the definition of advertising injury but it wouldn't be in an advertising it's advertising injury and personal injury is the phrase that is defined and includes a bunch of offenses so could you ever have under your interpretation of the policy could you ever have an advertising injury that was not excluded under your interpretation of the exclusion I don't think so I think the there would be personal injury defined offenses that would not be affected by the exclusion but the advertising injury the kinds of things that are set up to be infringed in an advertisement are intellectual property ideas which entity was Mr. Dermott employed by I believe Mr. Dermott was officially an employee of Orange Precision OP which was owned by Minodora. Minodora was the holding company for OP and so in effect we consider him to be an employee of both entities for terms of the exclusion not just because of the any insured clause but just because of the practical reality that he was employed by this company that was owned wholly by the other company in fact I don't believe there were any employees of Minodora other than the partner who owned it Mr. Trazon who owned OP the purpose of it was to own OP I just want to quickly touch on the idea that by agreeing to defend and then the defense not being as perfect as it could have been according to their allegations that that somehow creates coverage for the settlement that they reached it doesn't the case law is very clear that a breach of a duty to defend even if it was a breach the damages for that are the cost of defending the case they do not include a settlement only if it is ultimately determined that the policy provides coverage for the claim then the insured can recover the settlement and that's a showing beyond simply potential coverage that's actual coverage and that's the Emerald Bay case the Richards case we cited in our papers alright thank you very much thank you very quickly your honor I can deal head on and fearlessly with each of the nine or ten points in a nutshell number one the endurances council suggests that the so called voluntary payments provision applies case after case after case says that does not come into play unless and until you are a defending carrier point two we were the allegation is theft of a product not the use of an advertising idea that argument is belied by any fair reading of the first amended cross complaint all through that document are allegations of what the ideas were when they were communicated a breach of an implied covenant to use the ad idea etc the third argument there was no wrongful taking there doesn't have to be a wrongful taking justice Schroeder will recall and I've been litigating this long enough I remember when piracy was one of the offenses and that would be pre-1986 and later on the ISO form changed and it became misappropriation of an advertising idea or style of doing business well now we've moved on and now we're dealing with the use of an advertising idea which is simpler and cleaner and really straightforward her next point was the crux of the complaint and she tried to summarize what the crux was which she assumed was the theft of an invention when I hear the word crux or gravamen or gist or essence I cringe and so does the Supreme Court because we know now from Horace Mann that you don't look at the predominating factors in the complaint you're looking for actual facts pleaded in other words the duty of defense is not triggered thematically it is triggered through actual facts point five on the prior publication exclusion I invite the court to look at the Boris Trazon declaration it resides at ER 401 paragraphs 15 and 16 kill that argument Mr. Trazon declares that there was no mention of the city contract no occasion to mention the city contract until the spring of 2009 which manifestly is after January 2009 so that exclusion never should have been decided the way it was moving to endurance there's a lot of chatter about the complaint was pending for a long time and so forth true this coverage litigation commenced in 2013 and we could argue about whether the May of 2013 this is why God made questions of fact for the trial court but let's assume for the sake of argument and again I choke but let's assume that the tender was in May so what Burlington for its part accepted the defense quote unquote and endurance for its part did nothing now any lawyer worth his salt can always have one more question I need to know this, I need to know that, I need another document but we know from the Supreme Court and from Montrose that the duty to defend is invariably decided as they said quote in the first instance unquote by the charging allegations of the operative complaint so all endurance had to do and all Burlington had to do was read the first amended cross complaint and make a decision you need to give me your wrap up statement here alright on the one point very quickly on the IP exclusion unless you don't need to hear on that you have about 15 seconds now on the intellectual property exclusion you have Burlington attaching an intellectual property exclusion to a policy this is a surplus line carrier that comes into our state and does this now any sophisticated reader forget lay reader but any good sophisticated reader of the policy would look at that endorsement and say wow this blows up exclusion I which is the old IP exclusion and probably it changes coverage G but there's no way to intuit that it would have anything to do with the offensive F thank you Mr. Ford thank you thank you Mr. Ford Mr. Holden and Ms. Carstensen for your very helpful presentations today for the challenging issues that we have in this case appreciate it very much the matter of Burlington Insurance Company and Endurance Specialty Insurance Company of America versus Minnedora Mr. Holden is submitted
judges: Schroeder, Murguia, Gleason